FILED

2016 Mar-04  AM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| STEVIE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  7:13-cv-02191-SGC |
| | ) | |
| CITY OF TUSCALOOSA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION[1]</u>

Plaintiff Stevie Jones ("Jones") brings this action against the City of Tuscaloosa ("the City"), alleging the City discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"). (Docs. 1 & 4).  The City has moved for summary judgment on the only claim Jones asserted in his Amended Complaint—a discriminatory failure to promote claim.[2]  (Doc. 21).  This Court has jurisdiction under 28 U.S.C. §§ 636(c), 1331, and 1367.  For the reasons stated below, the City's motion will be granted.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 33).

[2] The City initially moved for summary judgement on three claims possibly asserted in Jones's Amended Complaint:  (1) discriminatory failure to promote, (2) retaliation, and (3) hostile work environment.  (Doc. 22 at 13).  In response to the City's motion for summary judgment, Jones made it clear he is asserting only a discriminatory failure to promote claim and

## I.   <u>STANDARD OF REVIEW</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment always bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323

Once the moving party has met its burden, then the non-moving party must "go beyond the pleadings" and point to specific facts in the record to show there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324 (citation omitted).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curium)

---

is not asserting separate retaliation and hostile work environment claims.  (Doc. 29 at 18).  Accordingly, the City's motion for summary judgment is **MOOT** as to the nonexistent retaliation and hostile work environment claims, and the undersigned need not and does not address the City's arguments regarding those claims.

(quoting *Anderson*, 477 U.S. at 249).  The court must "examine the evidence in the light most favorable to the non-moving party," drawing all inferences in favor of such party.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence.).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation omitted).

## II.   RELEVANT FACTUAL BACKGROUND[3]

### A.   Jones's Employment with the City

Jones, an African American, earned his high school diploma in 1999 and has been employed by the City in its water and sewer department since 2001.  (Doc. 23 at 10-12).[4]  The City has multiple departments, which are managed by different people.  (*Id.* at 10, 96, 102).  Accordingly, the people who make hiring decisions for one department in the City are not necessarily the same people who make

---

[3] Consistent with the summary judgment standard, to the extent any factual inferences are drawn, they are drawn in favor of Jones, the non-movant.

[4] All citations to the record refer to document and page numbers as assigned by the court's electronic filing system.

hiring decisions in another department.  (*See id.* at 96, 102).  Job openings with the City are posted online, and an interested individual must submit an application to be considered for a position in any of the City's departments.  (*Id.* at 28-29, 90, 96).  As to be expected, submitting an application for a position does not guarantee an interview.  (*Id.* at 90, 102).

Jones applied for an entry level crew worker position in the City's water and sewer department on March 16, 2001.  (*Id.* at 9-10, 96).  Jones interviewed for the position with Sedell Bullard, from the City's human resources department, and Ron Smith, who would be his initial supervisor, and the City hired Jones on May 21, 2001.  (*Id.* at 9, 11).  As a crew worker, Jones worked on a vacuum truck to clean and unclog sewer lines, and he also cleared right of ways, repaired trucks, and cut grass.  (*Id.* at 11).

On August 9, 2002, Jones received an oral warning from the City for neglecting his duties by being in a location during working hours where he was not supposed to be.  (*See id.* at 12, 62).  This is the only discipline Jones has received during his employment with the City.  (*Id.* at 12).

In 2003, Jones applied for a water/wastewater maintenance assistant position in the water and sewer department.  (*Id.* at 12).  Smith interviewed Jones, and the

4

City hired Jones for the position, effective June 14, 2003.[5]  (*Id.* at 12).  As a maintenance assistant, Jones works with and assists lift station maintenance technicians, or operators, in the water and sewer department.  (*Id.* at 15).  The maintenance assistant position was a promotion for Jones, and he has remained in the maintenance assistant position since 2003.  (*See id.* at 97; Doc. 29-1 at ¶ 3).

Sometime in 2003 or 2004, Stacey King, a Caucasian maintenance technician in the water and sewer department, told Jones, "you can't wipe that black off you," while Jones was washing his hands.  (Doc. 23 at 14; Doc. 29-1 at ¶ 12).  Jones responded by telling King he is "proud of [his] color and would not change it for anything," and King then "looked with silence and started turning back to a [Caucasian] worker."  (Doc. 23 at 14).  A few months after that incident, Jones heard King refer to an African-American maintenance operator as a monkey after King had a disagreement with the operator.  (*Id.* at 16; Doc. 29-1 at ¶¶ 20-21).

King became Jones's supervisor in the water and sewer department at some time after King made the offensive racial comments to Jones, though the record does not identify when that change occurred.[6]  (*See* doc. 23 at 15; 29-1 at ¶ 9).

---

[5] Before Jones received the promotion, the City initially offered the maintenance assistant position to a Caucasian employee who turned the position down.  (*Id.* at 13).  The City asserts the Caucasian employee had a better disciplinary record than Jones, while Jones asserts he had more experience than the Caucasian employee.  (*Id.* at 13, 97).

[6] Jones asserts "King was hired over [Essex Taylor, an African-American employee, hired before King] for the supervisor position."  (Doc. 29-1 at ¶¶ 18-19).

Jones testified that King showed favoritism to Caucasian employees in the water and sewer department.  (Doc. 30 at 4).

### B.   Jones's Applications for Promotions with the City

Since 2006, and as detailed below, Jones has applied for nine promotions with the City, including three promotions he applied for within the water and sewer department.[7]   Jones did not receive any of these promotions, and each of the positions was filled by a Caucasian applicant.  (*See* Doc. 29-1 at ¶¶ 3-4).

On October 25, 2006, Jones applied for a lift station maintenance technician position, which is also known as a maintenance operator position, in the water and sewer department.  (Doc. 23 at 18).  Jones interviewed for the position with Smith, but the City did not offer him the job.  (*Id.* at 18, 20).  Instead, the position went to Gary Honeycutt, a Caucasian employee.  (*Id.*; *See also* Doc. 29-1at ¶ 4).  Smith later told Jones he was the second choice and "was next in line for this position." (*See* Doc 23 at 18).  Honeycutt had twenty-two years of experience in commercial maintenance and an industrial electrical degree when the City offered him the job. (*Id.* at 19, 97).  Jones, however, had more "hand-on experience" than Honeycutt and had to show Honeycutt "a lot of tricks of the trade" after he was hired.  (*Id.*).

---

[7]   Although Jones's discriminatory failure to promote claim is limited to promotion decisions made on or after December 4, 2009, *see* Doc. 29 at 13 n.1, all of the promotions Jones has applied for with the City are addressed in this Memorandum Opinion's factual background section in order to give context to Jones's claim.

6

Jones applied for another promotion in May 2007 when he submitted an application for a grease trap inspector position with the water and sewer department. (*Id.* at 22).  The duties of that position include inspecting grease traps, certifying grease traps, issuing citations, and communicating findings.  (*Id.*).  Jones had some experience with grease traps because he would "help out" when the department needed someone to help another employee who worked with grease traps.  (*Id.* at 23).  As before, Jones interviewed for the position with Smith but did not get the promotion.  (*Id.* at 22-23).  The position went instead to Phillip Burroughs, a Caucasian employee.  (*Id.*; Doc. 29-1 at ¶ 23).  Burroughs had been working with the City on a lift station maintenance crew longer than Jones had when the City offered the grease trap inspector position to Burroughs.  (Doc. 23 at 23).  Additionally, Jimmy Junkin, the head of the water and sewer department, asserts Burroughs had a better disciplinary record than Jones and possessed an ADEM Grade II Wastewater Operation Certificate.[8, 9]  (*Id.* at 97).

Jones did not apply for another promotion until July 2011, when he applied for a facilities maintenance technician position in the City's facilities maintenance

---

[8] ADEM stands for Alabama Department of Environmental Management.  Jones asserts Burroughs did not get his ADEM certificate until after he was offered the grease trap inspector position. (Doc. 23 at 23).

[9] In his opposition to the City's motion for summary judgment, Jones notes he needs additional discovery in response to many of the City's statements of fact regarding the other candidates' qualifications and disciplinary records.  (Doc. 29 at 4-7).  Jones, however, has not filed a Rule 56(d) affidavit or declaration showing why he cannot present facts necessary to justify his opposition.  *See* Fed. R. Civ. P. 56(d).

department.    (Doc. 23 at 28).    The position's duties include repairing air conditioning and heating equipment, including ducts and exhausts, and repairing coolers and refrigerators.  (*Id.*).  According to the job posting for the position, the City preferred applicants with vocational or technical training in industrial commercial heating, ventilation, and air conditioning system maintenance.  (*Id.* at 29).  Jones was taking classes at Shelton State Community College for a certificate in air conditioning and refrigeration in July 2011, but he did not yet have the certificate when he applied for the position.  (*Id.*).  Jones interviewed for the position but, once again, did not get the promotion.  (*Id.*).  Instead, the position went to Danny Lynn.  (*Id.*).  Cliff Penick, the director and department head of the facilities maintenance department, asserts Lynn was selected because he had a better disciplinary record than Jones and possessed an air conditioner license.  (*Id.* at 90-91).  Jones is not aware of Lynn's qualifications for the position, or how they may compare to his own.  (*Id.* at 29).

Jones sustained an injury to his Achilles tendon while playing basketball on November 4, 2011, and his injury required surgery.  (Doc. 30 at 5).  Jones was on leave from work for about seven months to recover from his injury, and he returned to work in April 2012.  (*Id.*).  While Jones was out on leave in 2012, the City had two openings for the water/wastewater maintenance technician position in the water and sewer department.  (*See* Doc. 23 at 30).  The job openings were

8

posted online, but Jones did not submit an application for the positions. (*Id.*). The technician positions went to Donnie Smitherman and Robert Kinder, two Caucasian employees, in May 2012. (*Id.*). Junkin, the head of the water and sewer department, asserts Smitherman and Kinder were "more qualified" than Jones for the position. (*Id.* at 98).

Jones could have applied for the technician positions when they were posted but chose not to because he wanted to seek employment in other departments. (*Id.* at 30). Jones decided to look for opportunities outside of the water and sewer department because of the way he had been treated in the department, including being passed over for two other promotions he had applied for in 2006 and 2007. (*Id.*). Additionally, when Jones was preparing to apply for a different position, King told him he did not need to apply because he wouldn't get the position.[10] (*Id.* at 30-31; Doc. 29-1 at ¶¶ 9-10). King also told Smitherman, a Caucasian maintenance operator, "they wouldn't hire [African Americans] in this department, because if [they] hired [African Americans] and they didn't work out, they would be stuck with them." (Doc. 23 at 21, 31; Doc. 29-1 at ¶15). King made that comment "in relation to Archie Wilson, an African American employee in another department, who applied for a lift station operator position…." (Doc. 29-1 at ¶15).

---

[10] The record is unclear regarding when King made this statement and what position Jones was preparing to apply for when the statement was made.

After he returned to work in 2012, Jones submitted an application for a SSO/FOG[11] technical investigator position in the water and sewer department. (Doc. 23 at 31).  The responsibilities for that position include inspecting grease traps, ensuring city codes are complied with, reporting sewer overflows to ADEM, and conducting educational meetings.  (*Id.*).  The position also required using certain computer programs called Lucidity and GIS that Jones was not familiar with.  (*See id.* at 36).  Smith interviewed Jones for the position, but Jones was not selected.  (*Id.* at 36).  Rather, the City hired Craig Thorpe, a Caucasian senior equipment operator, for the SSO/FOG position.  (*Id.* at 34).  Junkin, the head of the water and sewer department, asserts Thorpe had a better disciplinary record than Jones and was more experienced with the computer software used by the SSO/FOG technical inspector.  (*Id.* at 98).

The next promotion Jones applied for was in October 2012 for a mechanical and gas inspector position in the City's planning and development services department.  (*Id.* at 37).  Among the responsibilities of that position are reviewing building plans, inspecting mechanical and gas installations to ensure compliance with all codes, and addressing erosion and safety issues at construction sites.  (*Id.* at 37, 65).  The City's preferred qualifications for the position are "[p]ossession of

---

[11] SSO/FOG stands for sanitary sewer overflow/fats, oil, and grease.  (Doc. 23 at 32).

HVAC[12] Card and/or Gas Journeyman Card." (*Id.* at 65). Jones had some experience working on house remodeling as a side job, and he had also earned an HVAC certificate from Shelton State Community College in September 2011, along with an HVAC Technician Certification EPA Clean Air Section 608 in June 2012. (*Id.* at 76).

Jones was interviewed for the mechanical and gas inspector position. (*See id.* at 39). The person who interviewed Jones asked him why he didn't apply for the job when it was first posted[13] and told Jones, "we [have] been looking for a guy like you." (*Id.*). After Jones's interview, the interviewer talked to King, though Jones does not know what King may have said about him. (*Id.* at 39-40). The City did not select Jones for the mechanical and gas inspector position; instead, the City hired Daniel Rice, who is Caucasian, for the position on November 5, 2012. (*Id.* at 38, 42, 70). Alan Boswell, the Chief Building Official within the planning and development services department, asserts Rice was selected over Jones because Rice had a better disciplinary record, a college degree, and a journeyman gas card, and he had experience working with the gas company for several years. (*Id.* at 68-69, 102).

---

[12] HVAC stands for heating, ventilation, and air conditioning.

[13] Jones was out on leave when the position was initially posted. (*See* Doc. 23 at 39). Jones applied for the job after he returned from leave and it was reposted. (*See id.*).

In June 2013, Jones applied for two facilities maintenance supervisor positions in the facilities maintenance department:  an electrical supervisor and an HVAC supervisor.  (Doc. 23 at 50).  The "positions involved pricing and bidding jobs, and construction coordination of electrical and HVAC projects."  (*Id.* at 91). The City received twenty-seven applications for the positions, including Jones's, and Jones was not selected for an interview.  (*Id.* at 50-51).  Penick, the director of the facilities maintenance department, asserts Jones was less qualified than the six applicants who were interviewed.  (*Id.* at 91).  James Floyd Rice and Lloyd Hopkins were hired for the positions.  (*Id.* at 51).  Rice had experience as a certified master plumber, gas fitter, and lead supervisor, and Hopkins had experience as a lead electrician and foreman.  (*Id.* at 91).

Jones next applied for a promotion in late 2013 when he submitted an application for a building inspector position in the City's planning and development services department.  (*Id.* at 52, 103).  The position required five years of experience in the building trades.  (*Id.* at 103).  Jones had "worked on the side" doing home remodeling, but he did not have five years of experience in the building trades and admitted he did not know "a whole lot" about building codes. (*Id.* at 52-53).    The City received eighty-six applications for the position and did not select Jones for an interview.  (*Id.* at 103).  The City hired Kenneth Pritchett for the position on February 5, 2014.   (*Id.* at 52-54, 103).   Pritchett had more

experience in residential construction than Jones did, and he had worked as a maintenance technician for the City since 1994. (*Id.* at 79, 103).

Jones also applied for a plumbing and gas inspector position in early 2014 in the planning and development department. (Doc. 23 at 55). Once again, Jones was not interviewed for the position. (*Id.* at 56, 103). Boswell, the City's Chief Building Official, asserts Jones was less qualified than the applicants who were interviewed. (*Id.* at 103-04). In March 2014, the City hired Dale Hall for the position. (*Id.* at 104). Hall had twenty-five years of experience as a plumber, a master plumber's license, a master gas fitter's license, and a medical gas license. (*Id.* at 84, 104).

Finally, Jones applied for another promotion in March 2014 when he submitted an application for a facilities maintenance technician position in the City's facilities maintenance department. (*Id.* at 57). The City received twenty-nine applications for the position and did not grant Jones an interview for the opening. (*Id.* at 57). Jones does not know the qualifications of the people who interviewed for the position. (*Id.*). The City hired Brandon Cain for the position on March 27, 2014. (*Id.* at 58-59, 92). Cain is a "college graduate, journeyman electrician, [] a master mechanic, and possessed an air conditioner repairman's card." (*Id.* at 92).

### C.   Jones's Grievance and EEOC Charge

Jones filed a grievance with the City on March 18, 2013, which he submitted to Sedell Bullard, an African American in the City's human resources department. (Doc. 23 at 42, 71).  Jones's grievance described several different issues, including his assignments to work with a maintenance operator who was "on drugs" and an assignment to "be trained and learn all the duties of a secretary" at the wastewater treatment plant.  (*Id.* at 44-45, 71).  Because Jones wanted to focus only on those issues, his grievance did not mention any of the denial of promotions Jones had applied for.  (*Id.* at 43).

Jones then filed an EEOC Charge against the City on April 8, 2013, asserting he had applied for several jobs he was qualified for, and "[o]ther Caucasian applicants have been hired ahead of [him]" even though Jones "qualified ahead of these applicants through training and seniority."  (*Id.* at 73).  The EEOC closed its file on Jones's charge and issued a right to sue letter on September 5, 2013.  (*Id.* at 74).  This action followed.

## III.   ANALYSIS

Jones alleges the City discriminated against him in violation of Title VII and § 1981 when it did not promote him because of his race.[14]  (Doc. 1; Doc. 4).  Jones

---

[14] Title VII and § 1981 "have the same requirements of proof and use the same analytical framework…."   *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, the court considers Jones's discriminatory failure to promote claim as a single claim.

bears the ultimate burden of proving his claim of discrimination. *See, e.g.*, *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) ("'[T]he ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff.") (citation omitted); *Walker v. Nations Bank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). Jones may prove his claim with either direct or circumstantial evidence.

### A.   <u>Direct Evidence of Discrimination</u>

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard*, 161 F.3d at 1330 (citation omitted); *see also Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002) ("'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification]' are direct evidence of discrimination.") (citation omitted). Accordingly, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330 (citation omitted).

Jones asserts he "make[s] direct allegations of racial discrimination against King" based on King's racial comments to Jones. (Doc. 29-1 at ¶ 12; *See also* Doc. 29 at 12). Before he became Jones's supervisor, King said to Jones, "[you]

can't wipe the black off you," and he referred to another African-American employee as a monkey. (*Id.* at ¶¶ 12, 21). Moreover, at some time while King was Jones's supervisor, King told Jones "[t]here was no point in applying for [a] job because [King] would not get it." (*Id.* at ¶ 9). King also told a white employee, "[t]hey will not hire blacks in [the water and sewer] department, because if he hired blacks and they did not work out he would be stuck [with] them." (*Id.* at 15). While these comments are offensive and concerning, they do not constitute direct evidence of discrimination. First, there is no evidence King, who was a maintenance operator and then a supervisor in the water and sewer department, was a decisionmaker regarding any of the promotions Jones applied for. Also, there is no evidence King's remarks were made in relation to any of the promotions at issue in this matter. Indeed, the Rule 56 record does not reveal when King told Jones there was no point in applying for a job, or what job King may have been referring to.

### B.   The *McDonnell Douglas* Burden-Shifting Framework

With no direct evidence of discrimination, Jones must rely on circumstantial evidence to establish his claim, employing the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This requires a plaintiff to first establish a prima facie case of discrimination by showing "(1) he is a member of a protected class; (2) he was qualified and applied

for the promotion; (3) he was rejected despite his qualifications; and (4) the position was filled by an individual outside the protected class." *Holmes v. Alabama Bd. of Pardons & Paroles*, 591 Fed. Appx. 737, 742 (11th Cir. 2014) (citing *Walker v. Mortham*, 158 F.3d 1177, 1186, 1193 (11th Cir. 1998)).  If the plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the promotion decision."  *Id.* (citing *Kidd. v. Mando Am. Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013)).  Because the employer must only produce, not prove, a non-discriminatory reason for its action, the employer's burden is "exceedingly light."  *Nations Bank*, 53 F.3d at 1556.  Once the employer meets its burden of production, the burden shifts back to the plaintiff to show the employer's proffered reason is just pretext for discrimination.  *Holmes*, 591 Fed. Appx. at 742 (citing *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007)).

1.    *The City's reasons for its decisions regarding the promotions*

Here, the City does not argue Jones cannot establish a prima facie case of discrimination.[15]  (*See* Doc. 22 at 13-14).  Rather, the City argues it had legitimate,

---

[15] In its reply brief the City asserts Jones failed to establish a prima facie case with respect to several of the promotions he applied for because he did not have the minimum requirements for those positions.  (Doc. 31 at 4).  However, because the City raised this argument for the first time in its reply brief, it will not be considered by the court.  *See Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (citations and internal quotations omitted); *Pennsylvania Nat. Mut. Cas. Ins.*

nondiscriminatory reasons for selecting other candidates for the promotions instead of Jones, and it points to the other candidates' qualifications, such as professional experience and education, and the candidates' disciplinary records, to justify its decisions regarding the promotions. (*Id.* at 14). Jones's failure to promote claim involves eight different promotions he was denied since December 4, 2009.[16] The City produced evidence of the following reasons to justify each of its decision regarding those promotions:

(1) July 2011: the candidate selected over Jones for the facilities maintenance technician position had a better disciplinary record than Jones and possessed an air conditioner license, which Jones did not have;

(2) May 2012: the two candidates selected for the maintenance technicians were "more qualified than [Jones];"[17]

---

*Co. v. J.F. Morgan Gen. Contractors, Inc.*, 79 F.Supp.3d 1245, 1256 (N.D. Ala. 2015) (declining to consider an argument raised for the first time in a party's reply brief) (citations omitted).

[16] Jones asserts a four-year statute of limitations applies to his failure to promote claim. (Doc. 29 at 13, n.1). A federal four-year statute of limitations applies to federal statutes enacted after December 1, 1990, except as otherwise provided by law. 28 U.S.C. § 1658. Accordingly, the four-year statute of limitations will apply to Jones's failure to promote claim under § 1981 if the claim was made possible by the 1991 revisions to the Civil Rights Act, otherwise a two-year statute of limitations will apply. *Edwards v. Nat'l Vision, Inc.*, 946 F.Supp. 2d 1153, 1170 (N.D. Ala. 2013) (citations omitted). "Before the enactment of the 1991 Civil Rights Act, a failure to promote claim could be brought under § 1981 if the promotion rose to the level of an 'opportunity for a new and distinct relation between the employee and the employer.'" *Id.* (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989)). There is nothing in the Rule 56 record on this point, and the City does not challenge the application of a four-year statute of limitations. (Doc. 31 at 3). Accordingly, the court will consider each of the promotion decisions made during the four-year period before Jones filed his complaint.

[17] Although Jones did not apply for the maintenance technician positions in 2012, King had previously told Jones there was no point for him to apply for a job in the water and sewer department because he would not get the position. (Doc. 29-1 at ¶ 9). Thus, at this stage in the case, the court will consider the City's decision regarding the selection of candidates for these

(3) May 2012:  the candidate selected over Jones for the SSO/FOG technical inspector position had a better disciplinary record than Jones and was more experienced with the computer software used in the position;

(4) October 2012:   the candidate selected over Jones for the mechanical and gas inspector position had a college degree and a journeyman gas card, which Jones did not have;

(5) June 2013:  the candidates selected over Jones for the facilities maintenance supervisor positions had experience as a certified master plumber, gas fitter, and lead supervisor, and as a lead electrician and foreman;

(6) February 2014:  the candidate selected over Jones for the building inspector position had more experience in residential construction than Jones;

(7) March 2014:  the candidate selected over Jones for the plumbing and gas inspector position had twenty-five years of experience as a plumber, a master plumber's license, a master's gas fitter's license, and a medical gas license; and

(8) March 2014:  the candidate selected over Jones for the facilities maintenance technician position had a college degree, a journeyman electrician card, an air conditioner repairman's card, and was a master mechanic.

(Doc. 22 at 5-12; Doc. 23 at 84, 91, 92, 98, 102, 104).

Each of the above reasons for the City's decisions to select another candidate instead of Jones is a legitimate, non-discriminatory reason for the City's decision.   Although the City's assertion the two candidates selected for the maintenance technician positions in 2012 were "more qualified" than Jones is vague and conclusory, the City's burden is "exceedingly light," and Jones has not

---

positions in May 2012.  *See Int'l Brotherhood of Teamsters v. United States*, 324, 365-67 (1977) (finding the failure to submit a futile application does not bar relief under Title VII).

pointed to any authority to support his assertion the City's articulated reasons are insufficient.  *See Nations Bank*, 53 F.3d at 1556; (*see also* Doc. 29 at 4, 13, 15). Thus, the City satisfied its "exceedingly light" burden of production, and the burden shifts to Jones to show the City's proffered reasons for its promotion decisions are pretext for its actual, discriminatory reasons.

## 2.   *Pretext for discrimination*

To prove pretext, Jones "must meet the [City's proffered reasons] 'head on and rebut [them]'" by showing "both that the reason[s] [were] false and that discrimination was the real reason" for the City's promotion decisions.  *Holmes*, 591 Fed. Appx. at 743 (quoting *Chapman v. A1 Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000); citing *Brooks*, 446 F.3d at 1163).  Jones may accomplish that by showing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  *Rioux v. City of Atlanta, Ga.*, 520 F.3d, 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Additionally, "[Jones] may not establish that [the City's] proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer."  *Brooks*, 446 F.3d at 1163 (quotation and internal alteration omitted).  In the context of his

20

failure to promote claim, Jones "must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgement, could have chosen the candidate selected over the plaintiff.'" *Id.* (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004)).

With respect to the City's proffered reasons for three of the promotions— Jones's July 2011 application for facilities maintenance technician, his May 2012 application for SSO/FOG technician, and his June 2013 application for facilities maintenance supervisory positions—Jones essentially offers no response at all. Instead of addressing the City's proffered reasons for those decisions head on, Jones asserts he needs further discovery. (Doc. 29 at 4-5). Jones, however, did not file a Rule 56(f) affidavit or seek an order to compel discovery in this case. Additionally, Jones came forward with nothing to suggest the City's reasons for those promotion decisions were false or unworthy of credence. (*See* Doc. 23 at 29, As a result, Jones has not shown the City's proffered reasons for those three promotion decisions were pretext for discrimination.

Jones also offered very little in response to the City's proffered reasons for its selection of candidates in May 2012 for the maintenance technician positions in the water and sewer department. In an affidavit supporting the City's motion for summary judgment, the head of the City's water and sewer department attested that

the "promotions were awarded to two individuals more qualified than [Jones]." (Doc. 23 at 98).  In response to that statement, Jones simply states "the affidavit is conclusory and does not discuss the qualifications or name the persons [] promoted in 2012." (Doc. 29 at 4, 13).  The two candidates selected for the maintenance technician positions, Smitherman and Kinder, were named in Jones's deposition and in his declaration.  (Doc. 23 at 31; Doc. 29-1 at 2).  Jones did not introduce any evidence regarding Smitherman's and Kinder's qualifications for the promotion in May 2012, and therefore, he has not shown a question of fact regarding if the City's proffered reasons for the May 2012 decision regarding the maintenance technician positions were pretext for discrimination.

Next, in response to the City's reason for selecting Daniel Rice for the position of mechanical and gas inspector in the City's planning and development services department, Jones states he "had a HVAC certificate and was informed that the City was looking for someone like him for the position." (Doc. 29 at 5).  His statements, however, do nothing to show the City's proffered reasons for choosing Rice over Jones, including Rice's better disciplinary record, college degree, journeyman gas card, and experience working for the gas company, are unworthy of credence.  (*See* Doc. 22 at 7-8).  Additionally, Jones has not shown he is more qualified than, or equally qualified as, Rice, nor has he shown a disparity in qualifications so significant "that no reasonable person, in the exercise of

impartial judgment, could have chosen [Rice] over [Jones]." *Brooks*, 446 F.3d at 1163 (quotation omitted).

The City asserts it selected Pritchett over Jones for the building inspector position in February 2014 because Pritchett "had significantly more experience in residential construction than [Jones]." (Doc. 22 at 10). In response, Jones asserts he "did residential remodeling" and Pritchett's application reflects that prior to being selected for [the position], he was a maintenance technician for [the City]" and "[Pritchett's] residential construction experience appears to be limited to [framing] houses for five years in the 1980's." (Doc. 29 at 6). Once again, Jones did not meet the City's proffered reason for selecting Pritchett head on and come forward with facts to suggest the reason is unworthy of credence. Although Jones did some residential remodeling on the side, he admitted he had no experience working on new home construction and did not have five years of experience in the building trade. (Doc. 23 at 53). Although Pritchett's experience in residential home construction may be dated, that alone does not show Pritchett's prior experience would not motivate a reasonable employer or that no reasonable person could have chosen Pritchett over Jones. *See Brooks*, 446 F.3d at 1163.

In March 2014, the City selected Dale Hall for a plumbing and gas inspector position Jones had also applied for, and the City produced evidence Hall had twenty-five years of experience as a plumber and a master plumber and gas fitter

license as reasons for selecting Hall over Jones.  (*See* Doc. 23 at 84, 104).  In response, Jones notes that Hall has only a high school degree and that the affidavit from Alan Boswell, the City's Chief Building Official, "reflects that Jones lacked commercial and residential construction experience" while Hall's "resume reflects plumbing experience."  (Doc. 29 at 7).  First, there is no evidence more than a high school degree was a requirement for the plumbing and gas inspector position.  Second, although Boswell's statement regarding Jones's deficient experience in commercial and residential construction appears to be inconsistent with Hall's lack of commercial and residential construction experience, Boswell also describes Hall's experience as a plumber as a reason for selecting Hall.  (Doc. 23 at 104).  Moreover, the apparent inconsistency in Boswell's affidavit is not enough to show the City's proffered reason for selecting Hall is pretext for discrimination.  Indeed, there is nothing to suggest a reasonable employer would not have selected Hall over Jones based on Hall's plumbing experience and license, and Jones did not come forward with any evidence or argument to show no reasonable person could have chosen Hall over Jones.  *See Brooks*, 446 F.3d at 1163.

Finally, in response to the City's proffered reasons for selecting Brandon Cain for the facilities maintenance technician position in March 2014—Cain's college degree, air conditioner repairman's card, and his experience as a journeyman electrician and master mechanic, Jones simply disputes that a college

24

degree was a requirement for the position.[18]   (Doc. 29 at 7).   Jones's arguments do not show the City's proffered reasons for selecting Cain are pretext for discrimination because a reasonable employer may view a college degree as a positive attribute even if a college degree is not a requirement for the position. Additionally, Jones's argument does not address, much less meet head on, the other reasons the City produced to support its decision to select Cain rather than Jones for the position.   Accordingly, Jones has not shown that no reasonable employer could have selected Cain over Jones for the facilities maintenance technician position.   *See Brooks*, 446 F.3d at 1163.

Without evidence to show there is a question of fact regarding if the City's proffered reasons for its promotion decisions were pretext for discrimination, Jones appears to rely upon an alleged pattern of discrimination to show pretext.   (*See* Doc. 29 at 5-6, 8-9).   Jones argues he "observed a pattern [in the City] of failing to promote African-Americans," (*Id.* at 5), but the only specific evidence in the Rule 56 regarding the City's promotion decisions relates to the promotions involving Jones.   Jones asserts "not a single African-American was promoted while King was supervisor of the Lift station" in the water and sewer department and that "King

_____

[18] Jones also asserts "[t]he selectees for other positions, including Pritchett, ... listed no college degree on [their] application[s].   When Jones applies for [a] maintenance tech[nician], the lack of a college degree is one of the deciding factors."   (Doc. 29 at 7).   However, there is no evidence regarding the other applicants for the positions, including the position Pritchett received.   Thus, there is nothing to suggest it was inconsistent for the City to use the possession of a college degree in its decision it hire Cain, rather than Jones, for the facilities maintenance position.

was hired over Taylor, [an African-American employee with more experience] for the supervisor position" in the water and sewer department.  (Doc. 29-1 at 3).

Jones did not, however, introduce any evidence regarding how many African Americans applied for promotions within the City or the water and sewer department, what the qualifications of those applicants were, and who was selected for those promotions.  Moreover, Jones did not even attempt to introduce any statistical analysis regarding African Americans who applied for promotions in the City.  Thus, Jones cannot rely on the alleged pattern of discrimination to show the City's proffered reasons for its promotion decisions were pretext for its actual discriminatory reasons.  *See Jefferson v. Burger King Corp.*, 505 Fed. Appx. 830, 833 (11th Cir. 2013) ("A plaintiff may establish a prima facie case of racial discrimination by presenting statistical proof of a pattern of discrimination…, [but] [s]tatistics without an analytical foundation [] are 'virtually meaningless.'") (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004)) (internal citation omitted).

After a careful review of the Rule 56 record, the court concludes Jones failed to demonstrate any of the City's proffered reasons for selecting other candidates were pretext for discrimination.

**IV.**    **CONCLUSION**

Based on the foregoing, the City's motion for summary judgment (Doc. 21) will be granted, and Jones's claim against the City of Tuscaloosa will be dismissed with prejudice.  A separate order will be entered.

**DONE** this 4th day of March, 2016.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE